No. 27013

King's Mill Homeowners Association, Inc., a Colorado nonprofit corporation; Arbor Green Townhomes Association, Inc., a Colorado nonprofit corporation; Lake Arbor Homeowners Association, Inc., a Colorado nonprofit corporation; Pomona Lake Homeowners Association, Inc., a Colorado nonprofit corporation; The City of Arvada, Colorado, a municipal corporation; Joseph E. Casselman; Janice R. Mellberg; Roy Lee Manning, Jr.; Judith V. Kluge; Nancy A. Chastain; Gary M. Richard; James L. Starr; and Carolyn J. Starr v. The City of Westminster, Colorado, a municipal corporation; Gilbert A. Bean, Vi June, Frederick L. Allen, Donald H. Hoch, George A. Hovorka, Bert J. Johnson, and Fran Blazek, individually and as members of the City Council of the City of Westminster; Chester McPherson, Samuel E. Forbes, Robert Klock, James True, Don Weber, and Rodney Sheffer, individually and as members of the Planning Commission and Zoning Board of the City of Westminster; Steve Garman, as the Westminster City Manager; Howard B. Browning, as the Westminster Director of Public Works; John Franklin, as the Westminster Director of Planning; North Wadsworth Properties Co.; Carlile-Agee & Associates, Inc., d/b/a Data Core, Inc.; Bruce B. Paul; Richard F. Thomas; George W. Henderson and Dorothy J. Henderson; James B. Miller and Christine M. Miller; Harry A. Hutton and Iva Hutton; Albert C. Henke and Winifred A. Henke; Jordon Perlmutter; Samuel Primack; and Perl-Mack Enterprises, Co., a Colorado corporation

(557 P.2d 1186)

Decided December 27, 1976.

Howe & Windholz, James A. Windholz, for plaintiffs-appellants.

Stitt, Wittenbrink & Roan, James R. Stitt, for defendants-appellees, The City of Westminster, Colorado, a municipal corporation; Gilbert A. Bean, Vi June, Frederick L. Allen, Donald H. Hoch, George A. Hovorka, Bert J. Johnson, and Fran Blazek, individually and as members of the City Council of the City of Westminster; Chester McPherson, Samuel E. Forbes, Robert Klock, James True, Don Weber, and Rodney Sheffer,

individually and as members of the Planning Commission and Zoning Board of the City of Westminster; Steve Garman, as the Westminster City Manager; Howard B. Browning, as the Westminster Director of Public Works; John Franklin, as the Westminster Director of Planning.

Silverman, Makkai and Anson, Sheldon Silverman, Robert Anson, for defendants-appellees, North Wadsworth Properties Co.; Carlile-Agee & Associates, Inc., d/b/a Data Core, Inc.; Bruce B. Paul; Richard F. Thomas; George W. Henderson and Dorothy J. Henderson; James B. Miller and Christine M. Miller; Harry A. Hutton and Iva Hutton; Albert C. Henke and Winifred A. Henke; Jordon Perlmutter; Samuel Primack; and Perl-Mack Enterprises, Co.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

King's Mill Homeowners Association, Inc., et al. (appellants) appeal the trial court's dismissal of a complaint challenging the validity of a Westminster City Ordinance rezoning 119 acres of land.

The appellants, except for King's Mill Homeowners Association, Inc., are residents of the City of Arvada. At the conclusion of the trial, upon motion of the defendants, the court dismissed the action as to the Arvada plaintiffs on the ground that they had no standing to assert violations of procedural due process by the Westminster City Council. The court resolved all issues on the merits against King's Mill and dismissed the complaint. We affirm the judgment of the trial court.

On July 3, 1974, the Perl-Mack Companies filed an application with the City of Westminster to rezone 119 acres of land located in the northeast quadrant of the intersection of 88th Avenue and Wadsworth Boulevard. The application sought (1) to have Westminster annex eight acres of the tract which were located in Jefferson County, and (2) to rezone the entire 119 acre tract from residential to commercial pursuant to the city's zoning ordinance.

As required by the Westminster City Code,[1] Perl-Mack attached to

---

[1] Section 11-10-2(C) (1975) states:

"It shall be the responsibility of the applicant to determine the owners of record title of all the property within the area proposed for rezoning and within three hundred feet (300') thereof, and to prepare notice to be mailed by first class mail, postage prepaid, addressed to such owners at the address of the property within the area, and to the address appearing in the records of the County Treasurer if such address appearing on the Treasurer's records is substantially different than the address within the area. Such notice, together with addressed stamped envelopes, shall be delivered by the applicant to the City Clerk, at least five (5) days prior to the date of hearing. On or prior to the date set for hearing the City Clerk shall certify to the Zoning Board that the required notices were sent by first class mail (stating the date of mailing) to such persons at the addresses indicated."

its application a list of the names of record owners of property within 300 feet of the property sought to be rezoned. The list failed, however, to include the names of several Arvada residents who were within 300 feet of the property but whose names were not on the county tax assessor's rolls as of the time that Perl-Mack prepared its list. The property was posted and notice of the hearing was published in a local newspaper.[2] The notice given was in compliance with the ordinance.

On July 15, 1974, the Commission conducted a public hearing on Perl-Mack's application at which the proponents and opponents appeared and testified. Following the public hearing, the Commission approved the annexation proposal, but postponed action on the rezoning proposal until its next regular meeting scheduled for August 5, 1974.

The Commission called a special meeting, however, for July 29, 1974, at which time it voted to recommend "approval" of the proposed rezoning to the City Council.[3]

Pursuant to the City Code[4] the City Council conducted two public hearings regarding Perl-Mack's annexation and rezoning requests. Again, both the proponents and opponents of the proposals, represented by legal counsel, were heard. At the completion of the second hearing, the City Council acted favorably upon both the annexation and rezoning proposals, and passed an ordinance to that effect on October 14, 1974.

Various individuals and homeowner's associations adjacent to and in the vicinity of the subject property filed this action in the district court challenging the validity of the rezoning ordinance on numerous grounds. The complaint sought certiorari review of the City Council proceedings

---

[2] As required by *Westminster City Code* section 11-10-2(B) (1965).

[3] *Westminster City Code* section 2-1-9 (1959) provides the following:
"COMMISSION RECOMMENDATIONS: In every instance that the Commission is required to submit recommendations to the Council such recommendations shall be in substantially one of the following forms:
(A) Approval;
(B) Approval subject to specified conditions;
(C) Rejection because of specified findings.
"Each recommendation shall be accompanied by such findings of fact as the Commission may deem pertinent to the recommendation."

[4] *Westminster City Code* sections 11-10-3(A) and (C) (1960) provide:
"(A) Upon receipt of the report and recommendation of the Planning Commission for a proposed amendment to this Title, the Council shall set a date for public hearing before it for the consideration of an ordinance to make such zoning amendment. Notice of such public hearing shall be published in the Official Newpaper at least fifteen (15) days prior to such hearing.
. . . .
"(C) The Council shall not be required to hold public hearings on requests for amendments to the Zoning Title which are not favorably recommended by the Planning Commission and shall not be required to take any action whatsoever on such request."

under C.R.C.P. 106(a)(4) and declaratory and injunctive relief under C.R.C.P. 57.

The trial court dismissed the complaint as to all plaintiffs whose property was located in Arvada. It also dismissed the complaint as to King's Mill Homeowners Association, holding that the rezoning action was consistent with Westminster's master plan.

## I.

■ Appellants first contend that the trial court erred in dismissing the action as to the Arvada residents for lack of standing.

Assuming the trial court improperly dismissed the Arvada appellants, which we need not decide, the error was harmless. The Arvada appellants were represented at both of the City Council public hearings as well as at trial by the same counsel who represented King's Mill. Moreover, the interests of the Arvada appellants were substantially the same as those of King's Mill. Consequently, the arguments advanced by the Arvada appellants were ultimately resolved by the court in dismissing King's Mill's action on the merits.

## II.

■ Appellants next contend that the irregularities in the Planning Commission's procedures vitiate the whole of the proceedings. First, they argue that because one member of the Commission was not present at the Commission's public hearing, though he later reviewed the transcript, and another was present, though he was appointed after the hearing, the Commission vote to recommend approval to the Council was invalid. We disagree. It is sufficient to meet the requirement of a fair hearing that the Commission member, who does not personally hear the testimony, read and consider the record before voting. *Big Top, Inc. v. Hoffman*, 156 Colo. 362, 399 P.2d 249 (1965). Since the soon to be appointed member was· present at the public hearing, his vote after taking office is likewise valid.

The other issue raised relates to the validity of the Commission's special meeting mentioned above. However, the second meeting was not a public hearing, and no further testimony was to be taken even had the meeting been held at the originally scheduled time.[5]

## III.

As the trial court noted in its findings, the major substantive issue is the question of the sufficiency of the evidence before the City Council to support its action in amending the zoning map.

In its findings the court ruled that the standard for acceptance of the change was whether the proposed zoning action was in compliance with the master plan, in which case the action need only relate to the general

---

[5] *See* note 4 *supra.*

welfare of the community. Where the rezoning was in violation of the master plan, the court ruled that there must be some change in the conditions of the neighborhood to support the zoning change. The trial court found that a red circle marked upon the intersection of 88th Avenue and Wadsworth Boulevard on the master plan indicated that at least part of the subject property was intended to be zoned commercial.

In addition, the court found that to the extent the property was not intended to be commercial, there had been substantial changes in the character of the neighborhood to support the rezoning action.[6]

We hold that the trial court applied the proper standard in determining that the rezoning action by the City Council was proper. *Snyder v. City of Lakewood*, 189 Colo. 421, 542 P.2d 371 (1975); *Holly, Inc. v. Commissioners*, 140 Colo. 95, 342 P.2d 1032 (1959) and cases cited therein. Moreover, in reviewing a rezoning decision of a city zoning authority, the court must uphold the decision unless there is no competent evidence to support it. *Corper v. City and County of Denver*, 191 Colo. 252, 552 P.2d 13 (1976) and cases cited therein. In the case at bar, there is competent evidence to support the findings of the trial court.[7]

IV.

The appellants challenge the constitutionality of the rezoning ordinance contending that section three[8] constitutes "contract zoning." The cases cited by appellants in support of their position, however, are inapposite. No Colorado decision has been cited, nor has our research disclosed any Colorado case which raises the issue. Jurisdictions such as New York and California have held to the contrary under circumstances similar to the present case.

In *Church v. Town of Islip*, 8 N.Y.2d 254, 168 N.E.2d 680, 203 N.Y.S.2d 866 (1960), the Court of Appeals of New York held that since the Town Board could have zoned a particular property for business without any restrictions, the imposition of reasonable conditions could not invalidate the action. *See also Ayres v. City Council*, 34 Cal.2d 31, 207 P.2d 1 (1949). We agree with the New York Court of Appeals and the

---

[6] Specifically, the court stated:
"a review of the record as a whole herein contains evidence that there have been substantial changes in the character of the area as shown by the change from a rural to a suburban community, a large residential growth, the increased number of households, dramatic modifications in the traffic patterns, change in ownership of parcels, etc."

[7] *See* note 6 *supra*.

[8] "*Section 3.* This zoning is contingent upon applicant's representation that this property will be developed as a regional shopping center, and for no other purpose. This zoning shall be reviewed at the end of twenty four (24) months if construction of such a regional shopping center has not commenced. This zoning shall also be contingent upon conformity of building and subdivision regulations and a review and approval of site development plans, including landscape, by the City's staff."

Supreme Court of California.[9] The power to impose conditions on rezoning is an exercise of the police power and such conditions are valid as long as they are reasonably conceived.[10]

■ The fundamental purpose of zoning, as expressed in the Westminster City Code, is to preserve and promote the public health, safety and welfare of the inhabitants of the city and the public generally, and to encourage and facilitate the orderly growth of the city.[11]

■ The conditions set forth in section three of the ordinance[12] are not inimical to the police power. Neither do they constitute a surrender of the police power. Rather, the conditions were imposed to meet increasing needs caused by the great population expansion in the area and at the same time to make the change from residential to commercial use a smooth transition.

### V.

Appellants next contend that the rezoning amendment constitutes spot zoning and bears no relationship to the health, safety and welfare of the public, and is therefore *ultra vires*. Relying upon *Clark v. City of Boulder*, 146 Colo. 526, 362 P.2d 160 (1961), appellants argue that changes in a zoning ordinance must be for the purpose of furthering a comprehensive zoning plan.

■ We agree with the appellants that *Clark v. City of Boulder, supra* states the appropriate standard for determining whether a particular action constitutes spot zoning. In *Clark* this court summarized the applicable principles as follows:

"In determining whether spot zoning is involved, the test is whether the change in question was made with the purpose of furthering a comprehensive zoning plan or designed merely to relieve a particular property from the restrictions of the zoning regulations."[13]

■ The trial court made findings of fact that the rezoning amendment was consistent with the comprehensive plan. Moreover, because of changed conditions in the area, the court found that the amendment was in furtherance of the public health, safety and welfare. As noted previously, there is sufficient competent evidence in the record to support the findings of the trial court.

---

[9] *See* Note, 23 *Hastings L. Rev.* 825, 832-33 (1972).

[10] *See Transamerica Title Insurance Co. v. City of Tucson*, 23 Ariz.App. 385, 533 P.2d 693 (1975); *Scrutton v. County of Sacramento*, 275 Cal.App.2d 412, 79 Cal.Rptr. 872 (1969). We recognize, as the cases cited by appellants hold, that municipalities may not by contract or otherwise surrender their governmental, legislative or police powers. *See, e.g. City of Farmer's Branch v. Hawnco, Inc.*, 435 S.W.2d 288 (Tex. Civ.App. 1968).

[11] Section 11-2-1 (1960).

[12] *See* note 8 *supra*.

[13] *See also R.M. Anderson, American Law of Zoning*, 242 (1968): "[The definitions of spot zoning] describe an amendment which reclassifies a small parcel in a manner inconsistent with existing zoning patterns, for the benefit of the owner and to the detriment of the community, or without any substantial public purpose."

The other contentions of the appellants are without merit and we therefore do not address them.

The judgment of the trial court is affirmed.